**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JAYMIE CLAXTON AND BERNETTE SKIPPER, | ) ) | |
| | ) | Case No. 14 C 10076 |
| Plaintiffs, | ) | |
| | ) | Judge Sara L. Ellis |
| v. | ) | |
| | ) | Magistrate Judge Michael T. Mason |
| THE CITY OF CHICAGO, ILLINOIS CHICAGO POLICE OFFICERS VINCENT RYAN (Star No. 12351), AND DAVID G. ADCOCK (Star No. 6673), | ) ) ) ) ) | |
| Defendants. | ) | |

## DEFENDANT CITY OF CHICAGO'S MOTION TO BIFURCATE SECTION 1983 CLAIMS AND TO STAY DISCOVERY AND TRIAL ON THOSE CLAIMS

Plaintiffs have sued the City of Chicago ("the City") and two of its police officers based on an October 3, 2014 encounter. See Complaint, attached hereto as Exhibit A. Plaintiffs allege the named defendant officers as well as some unknown officers are liable for federal claims of excessive force, conspiracy, failure to intervene, as well as several state law claims. *Id*.

As to the City, Plaintiffs seem to assert that the City is liable for each of the federal claims under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978).

From Plaintiffs' complaint and initial discovery requests, it is clear that prosecution and defense of Plaintiffs' *Monell* claims will involve "colossal" fact discovery,[1] motion practice

---

[1] The City borrows this term from the Court in *Ojeda-Beltran.v. Lucio*, 2008 WL 2782815 (N.D.Ill. July 16, 2008)), which granted the same motion the City brings before it now. See *id*. at *2 ("Plaintiffs' contention that the *Monell* litigation will not require substantial additional resources on the part of the parties is difficult to reconcile with the colossal scope of their *Monell* discovery requests.").

concerning that fact discovery, expert discovery, dispositive motion practice, and perhaps trial. Plaintiffs' *Monell* claims threaten completely to overwhelm what otherwise is a straightforward Section 1983 action, to the detriment of the parties, the Court, and the judicial process itself. Accordingly, pursuant to Fed. R. Civ. P. 42(b), the City moves this court to (1) bifurcate Plaintiffs' *Monell* claims against it from the claims against the individual defendants, (2) stay discovery and postpone trial on the *Monell* claims until resolution of all of Plaintiffs' claims against the named individual defendants, and (3) enter the City's proposed "Consent to Entry of Judgment Against Defendant City of Chicago," attached hereto as Exhibit J.

Common-sense, pragmatic values embodied in Rule 42(b) all favor granting this motion. Granting the motion will avoid unduly burdensome discovery, minimize the possibility of discovery disputes, eliminate the need for a lengthy and complex trial on the City's Section 1983 liability, avoid undue prejudice both to the individual defendants and the City, and relieve Plaintiffs of the burden of establishing municipal liability as long as they proves their constitutional rights were violated by one or more of the individual defendants, under the terms of the City's proposed "Consent to Entry of Judgment Against Defendant City of Chicago." All told, the City's motion allows the parties to fulfill their duty to "seek resolution of disputes at the least cost in time, expense and trauma to all parties and to the court." Preamble to the Illinois Rules of Professional Conduct. The City states that it has met this Court's meet-and-confer requirement for motions and the parties were unable to come to an agreement. The City therefore respectfully asks this Court to grant this motion.

## ARGUMENT

Rule 42(b) provides that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims,

crossclaims, counterclaims, or third-party claims." FCRP 42(b). The Seventh Circuit has confirmed that "a district judge may separate claims or issues for trial if the separation would prevent prejudice to a party or promote judicial economy." *Chlopek v. Federal Insurance Company*, 499 11 F.3d 692, 700 (7th Cir. 2007). "If one of these criteria is met, the district court may order bifurcation as long as doing so will not prejudice the non-moving party or violate the Seventh Amendment." *Id*. District courts have "considerable discretion to order the bifurcation of a trial." *Treece v. Hochstetler*, 213 F.3d 360, 364-65 (7th Cir. 2000).

Consistent with the "considerable discretion" vested in them to order bifurcation of claims, courts in this district "'have both granted and denied similar motions by the City.'"[2] In ruling on bifurcation, this Court should "'consider the principles in light of the facts of this case and the parties' arguments,'"[3] and reach a result that "will turn on a 'case-specific assessment of the advantages and disadvantages of bifurcation.'"[4]

Here, bifurcation of the *Monell* claims and stay of discovery related to these claims best serve the interests identified in Rule 42(b) of convenience, economy, expedition, and avoidance of prejudice, and granting the City's motion represents a sound exercise of this Court's inherent power to control its docket.[5] Accordingly, this Court should grant the City's motion.

**A. Bifurcation best serves the interests of litigation and judicial economy.**

Bifurcation allows the City to avoid burdensome and potentially unnecessary discovery

---

[2] *Kitchen v. Burge*, No. 10 C 4093, Memorandum Opinion and Order, dated November 2, 2012, at 3 (Tharp, J.) (quoting *Ojeda-Beltran v. Lucio*, 2008 WL 2782815, at *1 (citing cases)). The Memorandum Opinion in *Kitchen* is attached hereto as Exh. B.

[3] *Id.* at 3-4 (quoting *Ojeda-Beltran*, 2008 WL 2782815, at *1).

[4] *Id.* at 4 (quoting *Ojeda-Beltran*, 2008 WL 2782815, at *1).

[5] *Krocka v. City of Chicago*, 203 F.3d 507, 516 (7th Cir. 2000).

and litigation costs should Plaintiffs fail to establish a constitutional violation and thus, as a matter of law, be unable to prove any *Monell* violation.[6]  Bifurcation "permits a bypass of discovery relating to the municipality's policies and practices, which . . . can add significant time, effort, and complications to the discovery process."[7]  The undue burden of such discovery is especially apparent in this case, as it will encompass  a significant period of time predating the incident underlying this lawsuit, and will involve the systemic policies and practices of the City, including the Chicago Police Department, the Independent Police Review Authority, and the City Council oversight activity of these municipal entities.  Such discovery necessarily will delay what otherwise is a straightforward case concerning the procurement and execution of a search warrant.

Given Plaintiffs' *Monell* claims, the scope and magnitude of *Monell* discovery indeed will be "colossal."  According to Plaintiffs, the City has multiple policies that caused the violation of their constitutional rights that include: a failure to train its officers; a failure to supervise its officers; a failure to control its officers; a failure to punish and discipline its officers; a failure to make findings of wrongdoing by its officers in the correct proportional basis and a "code of silence." See Ex. A at ¶ 22. Witnesses and records from the Chicago Police Department, IPRA, the City Council and possibly other agencies dating back to 2005, is being sought for fact discovery alone. See a sampling of Plaintiffs' discovery requests, attached hereto as Ex. L. To prevail against the City, Plaintiffs must adduce evidence that these alleged municipal policies and practices were "widespread, enduring practices that violate constitutional

---

[6] *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point.").

[7] *Medina v. City of Chicago*, 100 F. Supp.2d 893, 895 (N.D. Ill. 2000) (Kennelly, J.).

4

rights in a systematic manner."[8]  In addition, Plaintiffs must establish that the City's final policymaker was deliberately indifferent to the various deficient municipal practices alleged by Plaintiffs – a demanding task.  Prosecution of these numerous, broad, and far-reaching claims will require a great deal of time and resources to gather the information and documents responsive to *Monell* written discovery.  Plaintiffs may well seek depositions of high-ranking personnel of the Chicago Police Department, the Independent Police Review Authority, and a member of the City Council. And costly expert discovery invariably will follow fact discovery. Bifurcation plainly furthers convenience, expedition, and economy. Thus, this Court should grant the City's motion.

Granting this motion also promotes judicial economy, and thus protects this Court's interests.  Bifurcation of the *Monell* claims eliminates the need for (1) judicial intervention in discovery disputes arising from these claims, which can be frequent and contentious; (2) ruling on the summary judgment motion that the City invariably will bring; and (3) if the City's motion for summary judgment is denied, presiding over a trial that will be lengthier, and legally and factually more complex, if all of Plaintiffs' claims are presented simultaneously to a jury.[9] Indeed, the Seventh Circuit explicitly endorsed bifurcation as a means to avoid "the waste of the valuable time and resources of the court," as well as of serving the interests furthered by Rule 42(b).[10]  For this reason alone, this Court should grant the City's motion.

### B. Bifurcation will help prevent undue prejudice.

---

[8] *See Cornfield by Lewis v. Consolidated High School Dist. No. 230*, 991 F.2d 1316, 1326 (7th Cir. 1993); *McNabola v. Chicago Transit Authority*, 10 F.3d 501, 511 (7th Cir. 1993).

[9] *See Medina*, 100 F. Supp.2d at 895 ("The trial of the claims 25 against the individual officers is . . . likely to be shorter, and perhaps significantly shorter, than a trial also involving *Monell* claims.").

[10] *See Treece v. Hochstetler*, 213 F.3d at 365.

A single trial of all claims against the individual defendants and the City will severely prejudice both sets of defendants. Rule 42(b) explicitly identifies avoidance of prejudice as grounds for bifurcation. Bifurcation of the *Monell* claims from the other claims protects the individual defendants and the City from the possible prejudice caused by the introduction at trial of extensive evidence against one set of defendants that should not apply to the other.

 "Plainly, the presentation of evidence relating to the wide-ranging allegations of the plaintiff's *Monell* claim create a substantial risk of prejudice for the individual defendants and undermines the ability of those defendants to receive a fair trial."[11]  In part to protect the individual defendants from such prejudice, the Court in the *Ojeda-Beltran* case also granted the same motion that is now before this Court:

> We believe that there is a real "danger that evidence admissible on the issues relating to conduct by the City . . . will contaminate the mind of the finder of fact in its consideration of the liability of the other defendant[s]." As demonstrated by Plaintiffs' complaint and discovery requests, Plaintiffs intend to prove their *Monell* claim, at least in part, through the introduction of evidence regarding alleged acts of police misconduct committed by non-party officers. We think a substantial risk exists that such evidence would be prejudicial to Defendant officers in their attempts to defend themselves against Plaintiffs' claims and conclude that bifurcation of the Monell claim is a proper means to combat this potential prejudice.[12]

Conversely, prejudice against the City also may arise from a single trial of the claims against the individually named defendants and the City.  A jury that finds liability against the individual officers may incorrectly and unfairly find that the City should be liable under *Monell* and its progeny, misconstruing evidence or the complicated law around *Monell*. From Plaintiffs'

---

[11] *Kitchen*, Memorandum Opinion and Order at 13.

[12] *Ojeda-Beltran v. Lucio*, 2008 WL 2782815, at *3 (citation omitted); *see also* Judge Zagel's recent acceptance of severing the *Monell* claim from the underlying claims in *Miranda v. City of Chicago, et al.*, 13 C 5929 (Doc. #77, Aug. 5, 2014).

complaint, it is clear that Plaintiffs may seek to introduce evidence of alleged misconduct by Commander Evans or other non-defendant individual officers to insinuate unfairly that the individual defendants in this case should be held liable, and/or to insinuate that the City should be held liable for those instances and the case at bar. Accordingly, to avoid prejudice that would run to the City and the individual defendants, this court should grant the City's motion.

### C.    Bifurcation will not affect Plaintiffs' recovery of any compensatory damages to which they may be entitled.

Bifurcation and a stay of discovery and trial as to the *Monell* claims will not affect Plaintiffs' recovery of any compensatory damages that a jury may award them – yet another reason to grant the City's motion.   The individually named defendants were all acting within the scope of their employment at all relevant times during the procurement and execution of the search warrant and the aftermath.  Therefore, the City of Chicago has both a statutory and a contractual obligation to indemnify the individual defendants for any judgment against them.[13] Moreover, as a matter of law, Plaintiffs are not entitled to recover any additional compensatory damages if they prevails against the City on their *Monell* claims after a finding of liability against any of the individual defendants.[14]   Thus, Plaintiffs have no economic incentive to proceed against the City, if they prove that the individual defendants violated their constitutional rights – the necessary predicate to go forward with *Monell*.

---

[13] *See* 735 ILCS 10/9-102.

[14] *See Spanish Action Committee of Chicago v. City of Chicago*, 766 F.2d 315, 321 (7th Cir. 1985); *Medina*, 100 F.Supp. at 895-96 ("from an economic standpoint, a prevailing plaintiff in a § 1983 excessive force case against police officers in Illinois gets nothing more from suing the municipality under *Monell* than he would get from suing just the officers . . . . As a result, plaintiffs generally choose to forego the more difficult route of seeking to hold the municipality liable under *Monell*").

However, although litigation of *Monell* claims provides no monetary windfall to Plaintiffs, such litigation generates often substantial attorney fees under 42 U.S.C. § 1988 that accrue solely to plaintiffs' counsel and not to plaintiffs themselves.  Hence, granting the City's motion helps minimize any potential abuse of the fee-shifting provisions of Section 1988.[15]

### D.    A "pragmatic mindset" favors granting bifurcation motions

Although certain courts in this jurisdiction have found that significant societal interests are served by permitting Section 1983 plaintiffs to adjudicate *Monell* liability,[16] various other courts "approach bifurcation motions with a pragmatic mindset."[17]  In *Moore v. Smith*, Judge Gettleman raised the pragmatic concerns discussed above when he queried "whether or not it's

---

[15] *See Williams v. 31 Murphy* (06 C 1199), in which Judge Marovich *sua sponte* opined consistent with the City's view that litigation of *Monell* claims often is driven by attorney fees:

> THE COURT: You also have a *Monell* claim in here, right?
>
> PLAINTIFF'S COUNSEL: Yes, we do, your Honor.
>
> THE COURT: Which for the life of me, I don't understand why, but that is neither here nor there. That's your decision. I'll explain it to you why I don't know why. If these state actors [the individual defendants] acted in violation of Section 1983, you're going to have liability that the City is going to pay for in any event. And if they didn't, there's going to be no liability whether there's a policy or practice or not. So the only thing that I see as far as this claim for *Monell* – and my practical judgment is that you just created a whole bunch more of discovery that you may or may not need in addressing the core issue of whether there was excessive force or not, and that is what perplexes me. *I think maybe it is because I am one of the few people in here that [doesn't] get paid by the hour. That is a rather cynical attitude but one that I don't apologize for.*

Transcript of Proceedings — Status Before the Hon. George Marovich, held on October 17, 2006, at 4 (emphasis added). A copy of this transcript is attached as Ex. C.

[16] *See, e.g., Grant v. City of Chicago*, 2006 WL 328265 at *3 (N.D. Ill. Feb. 10. 2006) (Lefkow, J.); <u>Cadiz v. Kruger</u>, 2007 WL 4293976 at *9-11 (N.D.Ill. Nov. 29, 2007) (Schenkier, J.) (discussion of the non-economic benefits to *Monell* claims "that should weigh into the equation"); *Medina* at 896 ("there are . . . non-economic benefits that one can obtain from suing a municipality that are less likely when the plaintiff pursues (or is permitted to pursue) only the individual officer.").

[17] <u>Cruz v. City of Chicago</u>, 2008 WL 5244616, at *1 (N.D.Ill. Dec. 16, 2008).

even worth pursuing these *Monell* claims when you have individuals, you can't get any extra damages on the *Monell* claim…. I do wonder from time to time why plaintiffs pursue these *Monell* claims when there is so -- the discovery is more involved, the litigation is much more difficult and the damages are the same."[18]  Plaintiffs' counsel essentially agreed, stating that Moore was "a unique case" because the City had not admitted that the individual defendants had been acting within the scope of their employment as Chicago police officers.[19]  According to plaintiffs' counsel, "we might not have brought this [*Monell* claim] if the City had admitted to scope of employment and color of law in [*Moore*]."[20]  Here, as noted above, the City admits that the individually named defendants were acting within the scope of their employment and under color of state law in their encounter with Plaintiffs.  Consequently, because the City has "accepted indemnity," then "we can just cut this *Monell* thing loose."[21]

Judge Shadur *sua sponte* has "had occasion in a couple of Section 1983 cases that have considerable age on them to urge that all of the concentration on *Monell* issues that frequently occupies so much time and effort really is not constructive."[22]  Judge Shadur affirmed that the plaintiff's interest in proceeding expeditiously to trial to adjudicate his individual claims is paramount, and that this interest is promoted by not litigating *Monell* claims:

> . . . when counsel represent individual plaintiffs, not a class, that counsel's primary responsibility is to the individual. And . . . if

---

[18] Transcript of Proceedings before the Hon. Robert W. Gettleman in *Moore v. Smith* (07 C 5908), dated March 31, 2011, at 6-7 (attached as Ex. D).

[19] *Id.* at 7.

[20] *Id.*

[21] *Id.* at 9.

[22] Transcript of Proceedings before the Hon. Milton I. Shadur in *Ramirez v. City of Chicago* (05 C 317), dated March 14, 2008 ("*Ramirez* Transcript") at 2 (attached as Ex. E).

that then entails the prospect of going to trial on the individual
claims without what would be really a major digression and a
major amount of time and effort spent on something that doesn't
bear on the individual's liability, it seems to me that makes a lot of
sense.[23]

Indeed, addressing plaintiff's counsel in *Scott*, Judge Shadur characterized his present view on

Section 1983 litigation — that it is not properly a vehicle for the advocacy of social change — as

akin to a conversion experience:

I used to be a crusader too in ancient times. But we have after all
obligations to our client. And the client is an individual. The
client is not a proponent of a cause. I am just as troubled as you
are by what has emerged about a lot of the things that went on or
didn't go on in the police department. But you see, you don't use
the individual lawsuit as kind of a springboard for dealing with
that. It would be different if what we were looking at were a class
action. . . . But again lawyers are lawyers for clients not for
cause[s]. If a cause gets assisted by representation it's one thing.
But *the focus here is for Mr. Scott, if his constitutional rights were
violated, [to] get a recovery.*[24]

Judge Pallmeyer agrees with Judge Shadur that the primary purpose of Section 1983

litigation is to make the plaintiff whole by an award of appropriate compensatory damages if he

can prove a violation of his constitutional rights.  According to Judge Pallmeyer in *Nix v. City of

Chicago*, in which she granted the City's predecessor "Case or Controversy" motion, the

necessary and sufficient relief to Plaintiffs

in a case like this is money. That's the relief. It isn't having
established some judgment against somebody. It's getting a check.

---

[23] *Id.* at 3-4. *See also* Transcript of Proceedings before the Hon. Milton I. Shadur in *Marshall v.
City of Chicago* (08 C 259), dated March 22, 2008 ("*Marshall* Transcript") (attached as Ex. F) at 3
("too often *Monell* claims occupy a lot more activity and a lot more time than is necessary."); Transcript
of Proceedings before the Hon. Milton I. Shadur in *Scott v. City of Chicago* (07 C 3684), dated April 28,
2008 ("*Scott* Transcript") (attached as Exh. G) at 3 ("So whenever I get these [cases with *Monell* issues]
now . . . it seems to me that what we are talking about is spending a lot of effort, lot of time in cases that
would otherwise reach trial much more quickly.").

[24] *Scott* Transcript at 5-6 (emphasis added). *See also Ramirez* Transcript at 2 ("Well, you know,
I suppose that learning is better even if it comes late.")

> If there is a defendant who's going to have a judgment entered against him or her and that judgment is going to be paid by the City, then it seems to me that that relief is satisfactory. I am not sure if there is some additional psychic satisfaction that anybody gets out of saying, "We won a judgment against the City of Chicago," then that might be psychic satisfaction that I am not sure is fair to impose fees on the defendant to pay.[25]

And in Judge Pallmeyer's view, it is precisely the payment of a judgment by the municipality that is the most meaningful way to bring about any kind of systemic change that some plaintiffs purportedly seek: "You know what I think moves the City to change? Having to pay a whole lot of money. That's what I think will move the City to change."[26]

Judge Zagel goes even further in his analysis by insisting that a court of law is not even the appropriate forum for bringing about social change and reform. According to Judge Zagel, it is the legislative branch of government (rather than the judicial branch) that has the duty and responsibility to effectuate municipal change, while it is the task of the courts to adjudicate discrete disputes. In *Parker v. Banner*, in which he granted the City's "Case or Controversy" motion, Judge Zagel writes:

> Given a choice between having a court hear a single case or having a legislature conduct a hearing (free from ordinary evidentiary constraints) in order to decide whether and how to change policy, practice or custom, the choice ought to be made in favor of leaving it to the legislature. It is the job of the City Council to deal with citywide policies and practices. The court sits to remedy any particular act by a city employee which violates the Constitution, and it will do so regardless of what the City Council may choose to do. Here that remedy would be a damage award which is being paid by the City. That award is a good reason for it to change

---

[25] Transcript of Proceedings in *Nix v. City of Chicago*, 04 C 7981, before Hon. Rebecca A. Pallmeyer, dated March 16, 2005 (attached hereto as Exh. H) at 7. *See also* Judge Shadur's observation that "again we deal with an individual lawsuit, and with [an] individual client's desire to say, 'Well, and I want to expose this also,' is not really the function of the lawsuit in which he is seeking recovery." *Scott* Transcript at 7.

[26] Transcript of Proceedings in *Nix v. City of Chicago*, 04 C 7981, before Hon. Rebecca A. Pallmeyer, dated April 28, 2005 (attached hereto as Exh. I) at 17.

policies that are unconstitutional.[27]

**E.     The city will agree to entry of judgment against it if Plaintiffs prevails on their claims that the individual defendants violated their constitutional rights.**

Under *Heller* and its progeny, the litigation of the *Monell* claims asserted by Plaintiffs ultimately may be unnecessary as a matter of law.  If the individually named defendants are found not liable to Plaintiffs for any constitutional violation, there is no basis on which to impose liability on the City pursuant to *Monell*.[28]  However, if these defendants are found to have violated Plaintiffs' constitutional rights, the City will consent to the entry of a judgment against it for the amount of damages caused by the violation, plus reasonable attorney fees, without requiring that Plaintiffs to prove the elements of Section 1983 municipal liability.[29]  Thus, in addition to moving this Court to bifurcate and stay trial and discovery on Plaintiffs' *Monell* claims against it, the City asks it to enter its proposed "Consent to Entry of Judgment Against Defendant City of Chicago" in this matter, attached hereto as Exhibit J.

This is no small benefit to Plaintiffs, as "the decision of a plaintiff to pursue a *Monell* claim carries with it a heavy burden of discovery and proof."[30]  The stipulation allows Plaintiffs to obtain a judgment against the City for all the compensatory damages to which he is entitled, as long as he proves his constitutional rights were violated, thereby avoiding altogether litigation of the *Monell* claims.  This would be true even if the individually

---

[27] *Parker v. Banner*, 479 F.Supp.43 2d 827, 834 (N.D.Ill. 2007).

[28] *See Treece*, 213 F.3d at 364 ("it is well established in this Circuit that a municipality's liability for a constitutional injury 'requires a finding that the individual officer[ ][is] liable on the underlying substantive claim.'") (citation omitted).

[29] *See* "Consent to Entry of Judgment Against Defendant City of Chicago" (Exh. J) at ¶¶ 4-6.

[30] *Medina*, 100 F. Supp.2d at 894.

named defendants successfully assert a qualified immunity defense on the ground that the offending conduct did not violate a clearly established right.[31]  Thus, given the provisions of the Consent, "disposition of the individual claims will either legally or practically end the litigation . . . . If the plaintiff prevails against the officer on his § 1983 claim, he is likely not to want or need to proceed any further. . . ."[32]  To the extent that a successful *Monell* claim serves to ensure payment of damages to Plaintiffs, as appropriate, the Consent achieves that goal.

Some courts and plaintiffs have expressed concern granting bifurcation of *Monell* claims might cause delay and potential prejudice to the Plaintiffs.[33]  But such a concern is unrealistic because (1) Plaintiffs will have been compensated in full for damages arising from their constitutional injuries, and they will not obtain any additional compensation if they prove their *Monell* claims at trial against the City; (2) if they litigate their claims against the City, Plaintiffs must satisfy the stringent elements of proof necessary to establish municipal liability; and (3) the City by its stipulation already has accepted entry of judgment against it on the *Monell* claims, preempting the need for such litigation.  As Judge Tharp noted in *Kitchen*, "[t]he express premise of the City's motion is not that the *Monell* claim will necessarily fall by the wayside, but that there is a good chance that it may – either because the individual defendants are found not to have violated the plaintiff's rights or, if they are found to have done so, because the plaintiff concludes that the verdict, and the accompanying damage award, are sufficient after all."[34]

---

[31] *See* "Consent to Entry of Judgment Against Defendant City of Chicago" (Exh. J) at ¶ 5.

[32] *Medina*, 100 F. Supp.2d at 895.

[33] *See, e.g., Cruz*, 2008 WL 5244616, at *2 ("[J]udges in this district have echoed Plaintiffs' concerns about delay of the case and possible prejudice to Plaintiffs from that delay.")

[34] *Kitchen*, Memorandum Opinion and Order at 10 (original 50 emphasis) (citing *Parker*, 479 F.Supp.2d at 834 ("If tiff prevails [against the individual defendants], then he can decide whether it is worth pursuing his claim against the City.")).

13

## CONCLUSION

In granting the City of Chicago summary judgment on plaintiff's *Monell* claims in *Moore*

*v. City of Chicago*, Judge Moran stated:

> . . . we are often unsure of the impetus behind alleging Monell
> claims in cases such as this one. . . . claims of municipal liability
> require an extensive amount of work on the part of plaintiff's
> attorneys and experts, and an extraordinary amount of money must
> be spent in order to prepare and prove them. But to what end? If
> the plaintiff prevails against the officer on a § 1983 claim, he or
> she is not likely to want or need to proceed any further, at least in
> this district and state. An Illinois statute directs local governments
> to pay tort judgments for compensatory damages for which its
> employees are liable; the Seventh Circuit has held that this statute
> permits the § 1983 plaintiff to bring a claim directly against the
> municipality and obtain a judgment requiring the municipality to
> pay the amount due to the plaintiff from the officer. Nor do we
> believe the municipality is more likely to be sued in its own
> capacity given that *Monell* claims rarely make it to trial.
> Furthermore, even if the city is found liable, punitive damages are
> not an available remedy.[35]

As Judge Ellis recently observed when granting the City's bifurcation motion in another

recent case similar to the one at bar:

> *Monell* discovery is very time-consuming. It can be and often is very onerous and doesn't
> necessarily move the ball forward in terms of the litigation and in terms of the specific
> claims against the individual defendants. This is not a case where *Monell* liability could
> actually lie if there were no underlying constitutional violation committed by the
> individual defendants who were named because this is a search warrant case and .. to a
> lesser extent an excessive force case. If it's found that there was no constitutional
> violation committed by the individual defendants, then there would be no *Monell* claim.
> ….Here, you can't have a bad search warrant case that is caused by a pattern and practice
> of allowing people to get bad warrants if there's no bad warrant to begin with.[36]

Judge Ellis's appraisal holds equally true here.

---

[35] 2007 WL 3037121, *9 (N.D. Ill. Oct. 15, 2007).

[36] Transcript of Proceedings before the Honorable Sara L. Ellis on Nov. 6, 2014, attached hereto as Ex. K, p. 3.

For the reasons set forth above, the City of Chicago asks this court to (1) bifurcate Plaintiffs' *Monell* claims against it, pursuant to Rule 42(b); (2) stay the City's answer, discovery and trial on those claims; and, (3) enter the City's proposed "Consent to Entry of Judgment Against Defendant City of Chicago" for the Plaintiff in this matter, attached hereto as Exhibit J.

Respectfully submitted,

STEPHEN R. PATTON
Corporation Counsel of the City of Chicago

By: /s/ Raoul Vertick Mowatt
Assistant Corporation Counsel
30 North LaSalle Street, Suite 900
Chicago, Illinois 60602
(312) 744-3283
Atty. No. 6302587

## CERTIFICATE OF SERVICE

I, an attorney, hereby certify that on July 6, 2015, I electronically filed the foregoing using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Raoul Vertick Mowatt

15