IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| JAYMIE CLAXTON and <br> BERNETTE SKIPPER, | ) <br> ) <br> ) | |
| Plaintiff, | ) <br> ) | Case No. 14-cv-10076 |
| v. | ) <br> ) | |
| THE CITY OF CHICAGO, ILLINOIS <br> CHICAGO POLICE OFFICERS <br> VINCENT RYAN (Star No. 12351), and <br> DAVID ADCOCK (Star No. 6673), | ) <br> ) <br> ) <br> ) <br> ) | Judge Ellis <br> Magistrate Judge Mason |
| Defendants. | ) | JURY TRIAL DEMANDED |

**PLAINTIFFS' MOTION TO COMPEL**

Now come Plaintiffs, by and through their counsel, Loevy & Loevy, and move this Court pursuant to Federal Rule of Civil Procedure 37 to compel Defendant City of Chicago to produce discovery as further described below. In support, Plaintiffs state as follows:

**Introduction**

1. It is undisputed that Plaintiff Jaymie Claxton was uninjured when he first encountered the Defendant Officers during a routine investigatory stop on the evening of October 3, 2014. It is likewise undisputed that the encounter concluded that evening with Mr. Claxton admitted to the hospital for a head wound. What happened between the initial interaction at 6:43 p.m. and Mr. Claxton's release from the hospital at approximately midnight that same night is the central question in this lawsuit.

2. Defendant Ryan testified at his deposition that he remained with Plaintiff while he was treated by paramedics at the District 4 police station and rode with him in the ambulance to Trinity Hospital. Defendant Adcock testified that he was tasked with inventorying the evidence from Plaintiff's arrest and completing the required paperwork. He had to drive to the District 5 police station in order to complete the inventory, and he then met Defendant Ryan at Trinity Hospital where they remained until the end of their shift. The police report generated in regards to this incident was attested to by Officer Adcock at 8:14 p.m. and the officers' shifts concluded at approximately midnight, around the same time that Plaintiff was released from the hospital.

3. Although not part of their testimony, Plaintiffs now know that at 7:43 p.m., exactly one hour after the Defendant Officers stopped Mr. Claxton, they conducted a traffic stop and filled out a contact card. Plaintiffs received the redacted contact card through a FOIA request. *See* Exhibit A.

4. Plaintiffs requested that Defendant City produce an unredacted copy of the contact card in this litigation. Pursuant to L.R. 37.2, the parties exchanged written communication about this issue wherein Defendant City stood by its previous objections to producing all contact cards and asserted objections on the basis of relevance and privacy interests. *See* Exhibit B. Plaintiffs now bring this motion before the Court to compel Defendant City to produce the one, unredacted contact card initiated by the Defendant Officers one hour after their encounter with

Plaintiffs began, as well as other relevant documents tailored to discover 404(b) evidence, as detailed below.

## Defendants Have No Valid Objection To Producing One Contact Card Relevant To The Events Of This Lawsuit

5. Plaintiffs have limited in both time and scope their request for the one, single contact card initiated by Defendant Officers during their shift on October 3, 2014. The only arguable objections remaining to production of this card is to relevancy and privacy. Neither objection, however, has merit.

6. First, in regards to relevancy, "the federal notice pleading system contemplates that parties will have broad discovery to investigate the facts and to help define and clarify the issues." *Awalt v. Marketti*, 2012 WL 6568242, at *3 (N.D. Ill., 2012) (citing *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S. Ct. 2380, 57 L.Ed.2d 253 (1978); *United States v. Farley,* 11 F.3d 1385, 13 90 (7th Cir.1993). The witness identified in the contact card will likely clarify at least some of the competing versions of events about what happened while Mr. Claxton was in police custody on October 3, 2014, and the witnesses' testimony is therefore relevant and discoverable. Notably, the witness was stopped by Defendant Officers in the general area where Mr. Claxton encountered the Defendants—outside of the officers' assigned beat. The traffic stop occurred at a time when Officer Ryan testified he was at Trinity Hospital and when Officer Adcock testified he was completing paperwork. All such evidence tends to prove Plaintiffs' conspiracy claims in that the events did not transpire as the officers suggest. *See* Dckt. 15 at ¶¶23-28.

3

7. The witness may also provide 404(b) evidence in regards to his interaction with the Defendant Officers that night, particularly if the Officers' conduct mirrored that of the Claxton encounter. He may also provide direct factual evidence about the Officers' interaction with Mr. Claxton, if the Officers made any reference to it in his presence. Such evidence, of course, is discoverable regardless if it is determined at a later date to be inadmissible at trial. *See* FRE 401; *see also Grayson v. City of Aurora*, 2013 WL 6697769, at *2 (N.D. Ill., 2013) (Because discovery is concerned with "relevant information"—not "relevant evidence"—the scope of relevance for discovery purposes is necessarily broader than it is for trial evidence under Federal Rule of Evidence ("FRE") 401.").

8. Second, the identification of the fact witness in the contact card is not subject to privacy concerns warranting protection under the Federal Discovery Rules. The City should have produced the name of this witness in response to written discovery, including Plaintiff's Request for Production number 1. *See* Exhibit C at pg. 1. Moreover, the City routinely produces contact cards and arrest reports without regard for witness names contained therein, and did so in this case. In fact, Counsel for Defendant City previously produced 124 pages of contact cards with zero protections in the last case litigated against one another in the Northern District of Illinois, *Gonzalez v. City of Chicago*, Case No. 11-cv-08356. Even if the Court finds that privacy of this fact witness is a concern, which it is not, there is a protective order already entered in this case that may apply. *See* Dckt. 52.

9. In short, it is wholly unfair that, knowing the relevancy as explained above, Defendants are in possession of the witnesses' name and contact information and are not providing the information to Plaintiffs. Defendants' attorneys have now had the opportunity to contact the witness while at the same time stalling Plaintiffs' attorney's efforts to do the same. Such an approach to discovery is gamesmanship and should not be permitted.

10. Plaintiff therefore respectfully requests an order from this Court compelling Defendant City to produce an unredacted copy of the contact card attached hereto as Exhibit A.

### Discovery Has Shown That Defendants Have No Valid Objection To Production Of Documents Tailored To Discover 404(b) Evidence

11. Plaintiff also seeks an order compelling Defendant City to respond to Plaintiffs' Request for Production number 29 and produce contact cards initiated by the Defendant Officers for a three month period prior to their interaction with Plaintiffs, as well as respond to Plaintiffs' Request for Production number 16 and produce Tactical Response Reports (TRR's) created by the Defendant Officers during their employment with the City of Chicago. *See* Exhibit C at pg. 6, 9. As the Court may be aware, contact cards are initiated by officers during routine investigatory stops, and TRRs are created by officers when force is used to effectuate an arrest. Defendant City objected to both requests on the basis that they were "unduly burdensome, not confined to a reasonable scope or time frame, not calculated to lead to the discovery of admissible evidence, and grossly disproportional to the needs of the case." Yet, the party opposing discovery has the

5

burden of showing the discovery is overly broad, unduly burdensome, or not relevant, *see Ott v. City of Milwaukee*, 2010 WL 5095305, at *4 (E.D.Wis.,2010), and Defendants have not met that burden.

12.     First, as discovery in this matter has unfolded, the relevance and likelihood of admissible 404(b) evidence against the officers has become more apparent. By way of example, Carla Chavers, an eyewitness to the Defendants' use of force, was asked at her deposition whether she was aware of the Defendant Officers acting in the same manner towards other citizens. In response, she provided multiple examples—of just her extended family members—having force used against them by the same Defendant Officers. Thus based on her testimony, discovery into the conduct of the Officers while on patrol is relevant to their motive and intent during the interaction at issue, and may likely provide admissible evidence that Mr. Claxton's "tripping" to the ground was not an accident, as argued by the defense. *See* FRE 404(b).

13.     Second, Plaintiffs' requests for contact cards and TRRs are reasonably tailored to discovery of admissible 404(b) evidence and in no way disproportionate to the needs of the case. The scope and timeframe of the contact cards are limited to 3 months prior to the October 3, 2014 incident, and TRRs are limited to each Officers' employment with the Department—for Defendant Ryan that encompasses only two years.[1] Plaintiffs' reasoning for the requested time frames is based on the fact that

---

[1] Defendant Adcock has been employed with the CPD since September of 2002. In the interest of compromise, Plaintiffs are willing to limit their requests for TRRs to a similar two year period.

contact cards are more routinely created when an officer is on patrol, therefore a smaller subset of time may still yield relevant information, whereas TRRs are likely to be created less sparingly, so a broader time period is needed. Therefore the scope and time of these documents and limited and should be produced.

14. Lastly, Defendants have not articulated a reason as to why Plaintiffs' requests for contact cards and TRRs are overly burdensome. *See Kadambi v. Express Scripts, Inc.*, 2015 WL 1636974, at *1 (N.D.Ind.,2015) ("[A] party objecting to discovery on the basis of undue burden must specifically demonstrate the burden that the discovery would impose."). Defendant City is on thin ground arguing that the requests are too burdensome for production as Defendant produced *all* contact cards (and arrest reports) ever created involving both Plaintiffs. In fact, many of the Plaintiffs' arrest reports were retrieved from a warehouse, *see e.g.* Exhibit D, and not electronically maintained in the CLEAR database as all of Plaintiffs' requested documents are. Defendants produced over 220 pages of documents that Defendant Officers will likely seek to use to demonstrate Plaintiffs' numerous interactions with the police, thus their claimed burdensome argument now fails and the reverse production—Defendant Officers' interactions with citizens—should now be discoverable.

15. Therefore, discovery has shown that there may be relevant and admissible 404(b) evidence against the Defendant Officers regarding the Officers' treatment of other citizens while on duty, and Plaintiff therefore seeks an order compelling Defendant City to produce the requested contact cards and TRR's.

7

WHEREFORE, Plaintiff respectfully requests that this Court enter an order compelling Defendant City of Chicago to produce the unredacted contact card attached hereto as Exhibit A, as well as provide responsive documents to Plaintiffs' Request for Productions numbers 16 and 29.

Respectfully submitted,

/s/ Julie M. Goodwin
*Attorney for Plaintiffs*

Arthur Loevy
Jon Loevy
Julie Goodwin
Cindy Tsai
Loevy & Loevy
312 N. May St., Ste. 100
Chicago, IL  60607
(312) 243-5900
(312) 243-5902

**CERTIFICATE OF SERVICE**

I, Julie Goodwin, an attorney, hereby certify that I served the foregoing Plaintiffs' Motion to Compel Discovery on all attorneys of record on December 9, 2015 via the Court's CM / ECF filing system.

/s/ Julie M. Goodwin